UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE WALLACE, CDCR #P-48941,<br><br>                              Plaintiff,<br><br>vs.<br><br>CCII R. OLSON, Appeals Coordinator, et al.<br><br>                             Defendants. | Case No.: 3:16-cv-1917-AJB-NLS<br><br>**ORDER:**<br><br>**1) DENYING MOTIONS FOR RECONSIDERATION, APPOINTMENT OF COUNSEL AND TO CORRECT ORDER [ECF Nos. 14, 19, 23]**<br><br>**2) GRANTING MOTION FOR LEAVE TO AMEND CAUSE OF ACTION [ECF No. 17]**<br><br>**AND**<br><br>**3) DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A** |

      TYRONE WALLACE ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, and in forma pauperis ("IFP"), has filed this civil rights action pursuant to 42 U.S.C. § 1983.

In his original Complaint, Plaintiff alleged two RJD appeals officials (Defendants Olson and Ramirez) denied him access to court in February and March 2013 by improperly screening out a CDC 602 inmate appeal he attempted to file in response to a disciplinary conviction arising out of November 2012 fight with his cellmate. *See* ECF No. 1 at 3-4, 16-20.

Plaintiff's First Amended Complaint ("FAC") re-alleges the same access to courts claims against Olson and Ramirez (ECF No. 15 at 5-7), but it includes additional claims against a RJD Psychologist (Defendant Dalglish) and RJD's Chief Medical Officer (Defendant Glynn) related to their failures in March and November 2012 to authorize his need for a single cell based on his paranoia. (*Id.* at 3-4.)

**I.     Procedural History**

On November 15, 2016, the Court granted Plaintiff leave to proceed IFP, denied his request for appointment of counsel, and dismissed his Complaint sua sponte for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A (ECF No. 7). Because Plaintiff is proceeding pro se, the Court also explained his pleading deficiencies and granted him leave to fix them. (*Id.* at 6-9.) Plaintiff responded by filing his FAC (ECF No. 15), a Motion for Reconsideration of the Court's November 15, 2016 Order (ECF No. 14), a Motion for Leave to Amend "Cause of Action #3" of the FAC filed on December 16, 2016 (ECF No. 17), a second Motion for Appointment of Counsel (ECF No. 19), and a "Motion to Correct" a Court scheduling Order filed on March 28, 2017 (ECF No. 23).

The Court will address each of Plaintiff's Motions in turn, and in conjunction with the sua sponte screening of his FAC as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b).

**II.    Motion for Reconsideration**

    A.     <u>Plaintiff's Claims</u>

On December 12, 2016, and within the 28 days permitted to file an application for reconsideration pursuant to S.D. CAL. CIVLR 7.1.i.2, or a motion to alter or amend a

judgment pursuant to FED. R. CIV. P. 59(e),[1] Plaintiff filed a Motion for Reconsideration of the Court's November 15, 2016 Order (ECF No. 14). Plaintiff requests reconsideration of the dismissal of his access to courts claim arguing that the Court "misstated fact" on page 8 of its Order in reference to CDC 602 Appeal Log No. C-13-00598.[2] (*Id.* at 2.)

B.    <u>Standard of Review</u>

Any Order resolving fewer than all of the claims among the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); S.D. CAL. CIVLR 7.1.i.1 (authorizing applications for reconsideration of "any motion … for any order or other relief [that] has been made to any judge and has been refused in whole or in part…"). While the Court's November 15, 2016 screening Order dismissed Plaintiff's Complaint in its entirety, no final judgment was entered, and Plaintiff was given leave to amend. *See WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136-37 (9th Cir. 1997) ("[W]hen a district court expressly grants leave to amend, it is plain that the order is not final."); *see also Martinez v. Wells Fargo Bank*, No. 12-CV-802-CAB (BGS), 2014 WL 12035852, at

---

[1] Plaintiff's Motion was entered into the Court's docket on December 15, 2016, nunc pro tunc to December 12, 2016, the date it was received by the Clerk. *See* ECF Nos. 13, 14. Moreover, Plaintiff attached a proof of service by mail dated November 18, 2016, in which he attests to have placed his Motion in a "deposit box so provided at Richard J. Donovan Correctional Facility (RJD)." (ECF No. 14 at 39.) *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (deeming notice of appeal to be "filed" when prisoner delivers it to prison authorities for forwarding to the district court); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) ("*Houston* mailbox rule applies to § 1983 suits filed by pro se prisoners.").

[2] CDC 602 Log No. RJD C-13-00598 was one of four inmate appeals related to Plaintiff's December 2012 disciplinary conviction, all of which he claims were improperly rejected and/or cancelled by Defendants Olson and Ramirez because "there is no Title 15 rule that state[s] [he] can't use correction tape or white out" when submitting an appeal. (ECF No. 14 at 2.) As the Court noted in its November 15, 2016 Order, however, none of the CDC 602 appeals attached as exhibits to his Complaint showed his appeals had been rejected for that reason. *See* ECF No. 7 at 8 n.4.

*1 (S.D. Cal. Mar. 21, 2014). The Court retains its inherent power, rooted in the common law, to reconsider or modify an interlocutory order for cause. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001); *see also United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir. 2000) (where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it.").

However, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kana Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Century Indem. Co. v. The Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2016 WL 96147, at *2 (D. Or. Jan. 7, 2016). Generally, reconsideration is only appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice. *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).[3]

In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *United States v. Munguia*, No. 1:08-CR-000228-LJO-1, 2016 WL 1452011, at *1 (E.D. Cal. Apr. 13, 2016). Motions to reconsider are also "not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented." *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997), *rev'd on other grounds*, 160 F.3d 1254 (9th Cir. 1998). Ultimately, a party seeking reconsideration must show "more

---

[3] "Indeed, courts frequently apply the same standard as that applicable to Rule 59(e) motions." *Fidelitad, Inc. v. Insitu, Inc.*, No. 13-CV-3128-TOR, 2016 WL 4265749, at *4 (E.D. Wash. Aug. 11, 2016) (citing *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (collecting cases)).

4

than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (citations and internal quotes omitted); *Wood v. Carey*, No. 2:04-CV-1225 MCE AC, 2015 WL 4617773, at *3 (E.D. Cal. July 31, 2015). "While a motion for reconsideration allows a party to bring a material oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to think about an issue again in the hope that it will come out the other way the second time." *Brown v. S Nev. Adult Mental Health Servs.*, 2014 WL 2807688, at *2 (D. Nev. 2014) (internal quotation omitted); *see also Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006).

That is what Plaintiff essentially seeks here—he disagrees with the Court's November 15, 2016 conclusion that his Complaint failed to allege facts sufficient to support an access to courts claim, and he re-directs the Court to exhibits originally attached to that pleading in hopes that the Court might change its mind as to whether they provide "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They do not. *See* ECF No. 14 at 2.

Therefore, because Plaintiff points to no intervening change in the law, material oversight, or any error whatsoever, his Motion for Reconsideration (ECF No. 14) must be DENIED.

### III. Motion for Appointment of Counsel

Plaintiff also requests that the Court to appoint him counsel due to his "bad handwriting," "low education," and "learning disability." (ECF No. 19 at 3-4).[4]

---

[4] The Court takes judicial notice of its own docket and notes that Plaintiff has filed the same motion in three other civil actions he has been simultaneously and actively litigating in the Southern District of California—none of which appear to involve claims clearly

All documents submitted by any pro se litigant, no matter how "inartfully pleaded" are held to "less stringent standards that those drafted by lawyers." *Id.* at 4 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But there is no constitutional right to counsel in a civil case; and nothing in Plaintiff's latest filings suggest the Court should exercise its limited discretion to request than an attorney represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1). *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Only "exceptional circumstances" support such a discretionary appointment. *Terrell v. Brewer*, 935 F.3d 1015, 1017 (9th Cir. 1991); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and a demonstrated inability of the pro se litigant to articulate his claims in light of their legal complexity. *Id.*

To date, and in this case alone, Plaintiff has filed two complaints (ECF Nos. 1, 15), three subsequent addenda and/or motions seeking leave to amend or supplement the causes of action included in those complaints (ECF Nos. 6, 9, 17), a motion for extension of time (ECF No. 11), a motion for reconsideration (ECF No. 14), and a motion requesting the court correct its own scheduling order (ECF No. 23)—all of which contain

---

duplicative of those he alleges in this case. *See Wallace v. Rundle, et al.*, S.D. Cal. Civil Case No. 3:16-cv-02233-BAS-DHB (alleging Fourteenth Amendment equal protection claims arising at RJD in 2015 and 2016 related to Plaintiff's exclusion from Disability Program Placement (DPP)) (ECF Nos. 13, 17, 19); *Wallace v. Sosa, et al.*, S.D. Cal. Civil Case No. 3:16-cv-01501-BAS-BGS (alleging access to courts violations arising at RJD in December 2014 through August 2015 related to Plaintiff's single-cell status ) (ECF Nos. 7, 17); and *Wallace v. Olivarria, et al.*, S.D. Cal. Civil Case No. 3:16-cv-01808-BAS-PCL (alleging free exercise of religion, RLUIPA, and access to courts claims arising at RJD in 2016) (ECF Nos. 20, 25). To date, neither this Court nor Judge Bashant has found Plaintiff entitled to the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) in any of his cases. *See Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007) (court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" (quoting *Bennett v. Medtronic, Inc.,* 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

factual allegations, legal arguments and voluminous exhibits in support. These pleadings together and alone demonstrate that while Plaintiff may not be formally trained in law, and may suffer from a "learning disability," (ECF No. 19 at 3), he has nevertheless shown he is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are typical, straightforward, and not legally "complex." *Agyeman*, 390 F.3d at 1103; *see also Meeks v. Nunez*, 2017 WL 476425 at *4 (S.D. Cal. Feb. 6, 2107) (unpub.) (denying appointment of counsel pursuant to § 1915(e)(1) where prisoners "alleged mental disability ha[d] not affected his ability to articulate his arguments and prosecute his case."). Finally, for the reasons discussed below, Plaintiff has also not shown he is likely to succeed on the merits, because neither of his pleadings in this case state a plausible claim for relief. *Id; see also Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014).

Therefore, Plaintiff's Motion for Appointment of Counsel (ECF No. 19) must be DENIED.

**IV.    Motion for Leave to Amend Cause of Action #3**

After he filed his FAC, Plaintiff filed a subsequent Motion seeking leave to amend it by adding a "3" to his citation to the civil rights statute, 42 U.S.C. § 1983. *See* ECF No. 17 at 3. Plaintiff attaches a replacement page with the full citation, and asks that the Clerk substitute the corrected page with page 5 of his FAC because the mistake was due to his learning disability. *Id.* at 3.

Local Rule 15.1.a provides that "[e]very pleading to which an amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself." S.D. CAL. CIVLR 15.1.a. Pro se litigants are required to follow the same rules as parties who are represented by counsel. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). However, "district courts have broad discretion in interpreting and applying their local rules," *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation and citation omitted), and the Court must construe the pleadings of a pro se litigant in a civil rights case liberally, affording him the benefit of doubt. *See Karim-*

7

*Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc).

Based on these standards, in light of Plaintiff's pro se status, and in consideration of his alleged disabilities, the Court GRANTS Plaintiff's Motion for leave to amend Cause of Action #3 (ECF No. 17) and will consider his substitute page to be part of his FAC for purposes of screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A.

## V. Motion to Correct Order

On March 28, 2017, the Court set a briefing schedule regarding Plaintiff's "Motion for Reconsideration re [ECF No. 7] Order on Motion to Appoint Counsel." Plaintiff responded with a one-page Motion requesting that the March 28, 2017 Order be "corrected" "because [his] Motion for Reconsideration was for more than [his] Motion for Counsel," (ECF No. 23), followed by supplemental argument in support (ECF No. 25).

In the interim between the Court's March 28, 2017 Order and Plaintiff's Motion to "Correct" it, however, the Court vacated its Order sua sponte because Plaintiff's FAC first requires screening, no Defendants have been served, and further briefing is not required (ECF No. 21). Accordingly, Plaintiff's Motion to Correct the Court's March 28, 2017 Order (ECF No. 23) is DENIED as moot.

## VI. Screening of First Amended Complaint

### A. Standard of Review

Because Plaintiff remains a prisoner and is proceeding IFP, his FAC (ECF No. 15), also requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

"The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v.*

8

*Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman,* 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Thus, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to, and in this case, later filed in order to supplement his SAC. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B. <u>Plaintiff's Allegations</u>

Plaintiff's access to courts claims as alleged against Defendants Olson and Ramirez are substantially the same as previously alleged in his original Complaint, although he now also claims Olson and Ramirez "conspired" to "obstruct justice" by doing so. (ECF No. 15 at 5-6.) Specifically, Plaintiff claims Defendant Ramirez improperly "screened out 602 appeal Log #RJD-C-13-00163" on January 15, 2013, and again on February 5, 2013." *Id.* at 5; 62.[5] Plaintiff further contends both Defendants

---

[5] Plaintiff's exhibits do *not* include copies of CDC 602 Log #RJD-C-13-00163, or copies of any CDC Form 695 which would have been issued during its screening process. However, it appears CDC 602 Log No. RJD-C-13-01141, which Plaintiff filed on March 20, 2013, and which he *does* attach as an exhibit, was rejected on March 28, 2013 by Defendant Olson because it "concern[ed] a anticipated action or decision." Olson further advised Plaintiff he could not "appeal a rejected appeal RJD-C-13-00163." (ECF No. 15 at 59.) A CDC 602 appeal may be "rejected" by the appeals coordinator for "any of" but "not limited to" the reasons set forth in CAL. CODE REGS, tit. 15 § 3084.6(b)(1)-(16). Once rejected per § 3084.6(b), an appeal may "later be accepted if the reason noted for the rejection is corrected" within 30 days. *Id.* § 3084.6(a)(2). Thus, these exhibits, together with Plaintiff's allegations, suggest that Plaintiff attempted to file CDC 602 Appeal Log

9

3:16-cv-1917-AJB-NLS

Olson and Ramirez improperly "screened out [his] 602 appeal for SHO Pittman denying[him] [a] defense witness," which "hindered [him] from filing a state writ of habeas corpus for a re-issue re-hearing," of his "RVR 115." (*Id.* at 6.) Plaintiff refers to several attached exhibits in support, all involving his CDC 115 Rules Violation Report ("RVR") RJD FC-12-492, and CDC 602 Appeal Log Nos. RJD-C-13-00598, RJD-C-13-00870,[6] and RJD-C-13-01141. (*Id.* at 26-36, 59-62.)

///

---

RJD-C-13-00163 "on 1-15-13" regarding his 11-15-12 cell fight, but Olson and Ramirez did "not log or assign [it]," or "send[] [him] an assignment notice," until after he "sen[t] [it] back" on 2-5-13 with requested document final RVR 115 115A 128G and mental health records denying [him] single cell status." (ECF No. 15 at 60-61.) After that appeal was assigned CDC 602 Appeal Log RJD-C-13-00163, and was apparently "rejected" again pursuant to § 3084.6(b), for reasons Plaintiff does *not* explain, he filed CDC 602 Appeal Log RJD-C-13-1141 on March 20, 2013, accusing Olson and Ramirez of improperly rejecting CDC 602 Appeal Log RJD-C-13-00163. (*Id.*) It is unclear whether CDC 602 Appeal Log RJD-C-13-00163 was ever "cancelled" pursuant to § 3084.6(c)(1)-(11), but "[o]nce cancelled, an appeal shall not be accepted," unless the appeals coordinator or Third Level Appeals Chief exercises his or her discretion to accept it based on "a determination … that cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.* §§ 3084.6(e), 3084.6(a)(3). However, "[t]he application of the rules provided in subsection § 3084.6(c) to [a] cancelled appeal *may* be separately appealed. *Id.* § 3084.6(e) (emphasis added).

[6] Plaintiff's exhibits show that CDC 602 Appeal Log RJD-C-13-00870, filed by Plaintiff on February 22, 2013, involves Lt. Pittman's alleged refusal to permit Plaintiff to call C/O Val[]dez as the "reporting witness" during the CDC 115 RVR Log No. FC-12-492 hearing held on December 2, 2012. (ECF No. 15 at 30-36.) Plaintiff's exhibits further show this appeal was rejected on February 28, 2013, by Defendants Olson and Ramirez pursuant to CAL. CODE REGS., tit. 15 § 3084.6(b)(7) ("The appeal is missing necessary supporting documents as established in section 3084.3.") and § 3084.6(b)(14) ("The inmate or parolee has not submitted his/her appeal on the departmentally approved appeal forms.") (ECF No. 15 at 28-29.) CDC 602 Appeal Log RJD-C-13-00870 is also marked "cancelled" on March 6, 2013, and as a "duplicate" of CDC 602 Appeal Log RJD-C-13-00598. (*See* ECF No. 15 at 30.) CAL. CODE REGS., tit. 15 § 3084.6(c)(2) provides that an appeal may be "cancelled" if it "duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending."

In addition, Plaintiff claims RJD Psychiatrist J. Dalglish and Chief Medical Officer M. Glynn exposed him to danger in March and November 2012 by failing to "renew [his] single cell chrono" and housing him with another inmate. (*Id.* at 3-4.)

C. Improper Grievance Processing

First, and to the extent Plaintiff's FAC and exhibits focus almost exclusively on Defendants Olson and Ramirez's alleged failures to properly follow CDCR Title 15 prison regulations governing the processing of his inmate appeals, he has failed to state a claim upon which § 1983 relief can be granted. *See Davis v. Scherer*, 468 U.S. 183, 192 (1984) (noting that a failure to comply with a state regulation is not "by itself actionable under § 1983."). There is no independent cause of action under § 1983 for a violation of Title 15 regulations. *See, e.g., Chappell v. Newbarth*, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Parra v. Hernandez*, 2009 WL 3818376, at 2, 8 (S.D. Cal. Nov. 13, 2009) (same). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997).

D. Access to Court

Second, and as this Court noted in its November 15, 2016 Order, Plaintiff does have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, that right is limited to the filing of non-frivolous direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354-55 ("The tools … require[d] to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit

11

3:16-cv-1917-AJB-NLS

that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

In addition, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

Finally, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413-14. The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Plaintiff's FAC still fails to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. Plaintiff's FAC is sparse, but it refers to, and he has attached, multiple exhibits related to at least four separate CDC 602 appeals, Log Nos. RJD-C-13-00598, Log No. RJD-C-13-0870, Log No. RJD-C-13-00163, and Log No. RJD-C-13-1141, all related to his December 2012 disciplinary conviction. (ECF No. 15 at 5-6, 26-36, 59-62). Based on Defendant Olson and Ramirez's rejections of these appeals, it appears Plaintiff claims he was "hinder[ed]" in his ability to "fil[e] a state writ of habeas corpus for a re-issue re-hearing" of his disciplinary conviction. (*Id.* at 6.) Critically, however, Plaintiff fails to include any

12

further "factual matter" to show how or why Defendant Olson or Ramirez's actions caused him to suffer "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any *non-frivolous* direct appeal, habeas petition, or civil rights action. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678. "Actual injury is not demonstrated by the simple fact that a prisoner is 'subject to a governmental institution" that he claims 'was not organized or managed properly.'" *Lewis*, 518 U.S. at 350 (citation omitted).

And while the contents of Plaintiff's rejected and ultimately cancelled CDC 602 Appeal Log No. RJD-C-13-00870 suggest he may have wished to file a state habeas petition challenging his December 2, 2012 disciplinary conviction on grounds that "Lt. Pittman denied [him] defense witness report[ing] C/O Val[]dez," (ECF No. 15 at 15), and to have been thwarted in this effort due to Olson and Ramirez's rejection of his administrative appeals, Plaintiff's exhibits further show that he *was* in fact, "advised that he may request witnesses for [the] hearing, as noted on the CDC 115-A," and that he *did* request "reporting employee Correctional Officer Valdez, LVN Golden, and RN Pauley." (*Id.*) However, Golden and Pauley both offered testimony by stipulation, and "[a]t the time of the hearing Inmate Wallace *waived* the presence of the reporting employee J. Valdez." (*Id.*) (emphasis added).

Thus, because Plaintiff's own exhibits show he waived Valdez's presence during his disciplinary hearing, any state habeas petition he now claims to have intended to file in order to challenge Valdez's absence would have no plausible basis in fact or law and would therefore, be frivolous. *See Neitzke v. Williams,* 490 U.S. 319, 328-30 (1989) (a claim is frivolous if it lacks any arguable basis in fact or in law); *see also Jones v. P. W.*, No. 16-CV-01468-SI, 2016 WL 4539506, at *4 (N.D. Cal. Aug. 31, 2016) (rejecting access to court claim because "[t]he underlying action [Plaintiff was] allegedly was stymied in presenting was not non-frivolous.").

Therefore, because Plaintiff's FAC offers no further allegations as to the nature or description of the "non-frivolous" and "arguable" claim he would have pursued were it

13

not for the rejection of his administrative appeals, *see Harbury*, 536 U.S. at 415 (noting that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."), the Court finds his FAC still fails to allege the actual injury required to support an access to courts claim. *See Lewis*, 518 U.S. at 348; *Jones,* 393 F.3d at 936; *Iqbal,* 556 U.S. at 678.

E.  Conspiracy

In conjunction with his access to courts claims, Plaintiff further alleges Defendants Ramirez and Olson "conspire[d] to commit an[] act injurious to public health[,] to public morals or to pervert or obstruct justice … when they screen[ed] out [his] 602 appeal[s]." (ECF No. 5, 6.) Plaintiff offers no "further factual enhancement" with relation to this "naked assertion," however. *See Iqbal*, 556 U.S. at 678 (citation omitted).

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward Cnty.,* 866 F.2d 1121, 1126 (9th Cir. 1989)); *Henry v. Miranda*, No. 1:16-CV-00458 EPG PC, 2017 WL 363013, at *7 (E.D. Cal. Jan. 25, 2017). Because Plaintiff's FAC is devoid of any "factual content that allows the court to draw the reasonable inference" that Olson and Ramirez agreed to violate, or that they in fact *did* violate any of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678; *Avalos*, 596 at 592; *Hart*, 450 F.3d at 1071, these claims are also subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. *See Watison,* 668 F.3d at 1112; *Wilhelm,* 680 F.3d at 1121. Conclusory allegations of conspiracy are simply insufficient to state a valid § 1983 claim. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam); *Jackson v. Singh,* No. 2:14-CV-2809-EFB P, 2017 WL 387254, at *3 (E.D. Cal. Jan. 27, 2017).

///

14

F. Exposure to Danger

Finally, Plaintiff contends Defendants Dalglish and Glynn "expose[d] [him] to danger" with "deliberate indifference" to his health and safety by failing to "renew [his] single cell chrono" in March 2012, and by housing him in a cell with another inmate, with whom he eventually fought in November 2012. (ECF No. 15 at 3-4.)

First, Plaintiff invokes both the Eighth and the Fourteenth Amendments with respect to this claim, but it is the Eighth Amendment's proscription of cruel and unusual punishments that governs a failure to protect claim. *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted).

Second, prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Id.* at 833-34 (quotation marks omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they are alleged to have demonstrated deliberate indifference; it is well settled that a prison official is deliberately indifferent only when he acts or fails to act despite his knowledge of a substantial risk that the inmate faces serious threat. *Farmer*, 511 U.S. at 834, 841 (quotations omitted); *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040. A prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm *and* disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847 (emphasis added).

Here, Plaintiff fails to allege that either Defendant Dalglish, RJD's Chief Psychiatrist, or Defendant Glynn, RJD's Chief Medical Officer, had actual knowledge

15

3:16-cv-1917-AJB-NLS

that he faced any specific or obvious risk of harm either by "recommend[ing] [him] for single cell status" in March 2012, or by "hav[ing] [him] housed" with another inmate. (ECF No. 15 at 3-4.) Instead he simply claims that his "mental health" required single-celling, and therefore, Dalglish and Glynn are to blame for the fight that erupted eight months later in November 2012. (*Id.* at 3.) And while Plaintiff uses the catch-phrase "deliberate indifference" with respect to his double-celling, pleadings like Plaintiff's which offer only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (citation omitted). Instead, Plaintiff must plead "factual content that allows the court to draw the reasonable inference" that Dalglish and Glynn knew he faced a substantial risk of danger if double-celled, and yet chose to ignore that risk. *Id.*; *Farmer*, 511 U.S. at 847. He has not.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It requires plausible allegations describing a state of mind more blameworthy than negligence and sufficient to show more than a "mere suspicion" that an attack might occur. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *Farmer*, 511 U.S. at 835 (citing *Estelle v. Gamble*, 429 U.S. 89, 104 (1976)). "[P]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *See Farmer*, 511 U.S. at 844.

Thus, the Court finds Plaintiff's Amended Complaint, like his original Complaint, must be dismissed in its entirety for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal,* 556 U.S. at 678.

And since Plaintiff has already been granted leave to amend to no avail, the Court finds further amendment would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

///

///

16

3:16-cv-1917-AJB-NLS

## VII. Conclusion and Order

For all the reasons explained, the Court:

1) **DENIES** Plaintiff's Motions for Reconsideration, Appointment of Counsel, and to Correct the Court's March 28, 2017 Order [ECF Nos. 14, 19, 23];

2) **GRANTS** Plaintiff's Motion for Leave to Amend Cause of Action #3 [ECF No. 17];

3) **DISMISSES** Plaintiff's Amended Complaint without further leave to amend for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and

4) **CERTIFIES** that an IFP appeal from this Order of dismissal would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: April 12, 2017

Hon. Anthony J. Battaglia
United States District Judge